

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 14, 2019

Honorable Denise Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    <u>United States v. Telemaque Lavidas,</u>
            19 Cr. 716 (DLC)

Dear Judge Cote:

    The Government respectfully submits this letter in opposition to the request of defendant Telemaque Lavidas (the "defendant") to relitigate this Court's denial of his prior two bail applications, filed on November 12, 2019 (hereinafter "Def. Ltr.").[1]  For the reasons set forth herein, the defendant has not identified grounds to re-open the proceedings and his application should be denied.

    In short, after carefully considering the arguments of both parties, Your Honor has already found that no set of conditions could reasonably assure the defendant's continued appearance in Court.  No facts have changed since the Court's prior rulings, and accordingly, nothing in the defendant's renewed application in any way alters that analysis.  The defendant continues to have every incentive to flee the jurisdiction, and continues to have access to significant wealth outside the United States, including substantial wealth of his father who is referenced in the Indictment as Director-1.  He has already had two bites at this apple, and the Court should not countenance his attempt at yet another bite.

## Background

    The defendant has been charged in nine counts for his participation in an insider trading scheme relating to the securities of Ariad Pharmaceuticals, Inc. ("Ariad"), a company on whose board of directors the defendant's father Athanasios Lavidas ("Athanasios") sat.  On four separate occasions, three in 2013 and one in 2015, Athanasios learned material, non-public information ("MNPI") in the course of his duties on the Ariad board, and disclosed that information to the defendant, who in turn disclosed the information to co-defendant Georgios Nikas ("Nikas"), so that Nikas could trade based on that information.  As further described

---

[1] The Government was not advised in advance that the defendant would be making a bail application, and as a result has not been able to conduct a thorough investigation of the claims the defendant raises about his family finances and the finances of his company Mediterra.

below, the defendant and Nikas had an extremely close personal relationship and the two of them often shared highly sensitive and personal information. After receiving that valuable MNPI from the defendant, Nikas executed timely, profitable securities trades, and also provided the information to numerous downstream tippees who also executed timely, profitable securities trades. The Government expects that the evidence will show that as a result of the defendant's illegal tips of Ariad's MNPI, Nikas and the other tippees profited by many millions of dollars.[2]

The defendant was arrested on October 18, 2019 while stopping over for a few days in New York in between an inbound flight from Athens and an outbound flight to Mexico. The defendant was promptly arraigned before Your Honor, and was represented by a team of retained counsel. At the arraignment, the Government sought the defendant's detention as a risk of flight, pursuant to 18 U.S.C. § 3142, and the defendant opposed that application. After hearing extended oral argument, the Court carefully weighed the factors set forth in 18 U.S.C. § 3142(g), and then ordered the defendant detained without prejudice to the defendant putting together a substantial bail package. (*See* Dkt. No. 7 ("There is a serious risk that the defendant will not appear.")).

The defendant brought a renewed bail application by letters dated October 22, 2019 and October 23, 2019. (Dkt. Nos. 11, 13). In those letters, the defendant argued both that the defendant had strong ties to the community and that the "weight of evidence against [the defendant] is not strong." (Dkt. No. 11). The defendant further argued that he did not pose a risk of flight because he had entered the United States after having been notified by Google that the FBI had "requested and obtained his email." (*Id.*). The Government opposed that application, arguing that the defendant had both the motive and resources to flee and avoid prosecution. (Dkt. No. 12). The Government's letter also responded to numerous of the defendant's arguments concerning his ties to the community. (*Id.*). On October 23, 2019, the parties appeared before Your Honor for argument on the defendant's application. Again, the Court heard lengthy argument, and again found that no bail conditions could ensure the defendant's continued appearance. After the Court made its findings, counsel for the defendant revoked his Speedy Trial waiver and asked for his case to be tried in December. The Court largely granted the defendant's request for a speedy trial and set a trial date for January 6, 2020.

On November 12, 2019, the defendant brought the instant application, once again arguing that the defendant should be released on bail due to his ties to the community and the supposed weakness of the Government's case. The parties are set to appear in Court at 2:00 p.m. today.

---

[2] The defendant asserts that the profits at issue in this case total $1.95 million. (Def. Ltr. at 10). In fact, and as the Government previously advised defense counsel by telephone, the profits at issue in this case, and which the Government believes would be relevant to any calculation of the sentencing range pursuant to the United States Sentencing Guidelines, are well in excess of $3.5 million. As a result, the Guidelines calculation set forth by the defendant—which results in a Guidelines range of 51 to 63 months—is understated.

## Applicable Law

A bail "hearing may be reopened . . . after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B). "However, '[a] bail hearing should not be reopened on the basis of information that was available to the defendant at the time of the hearing.'" *United States v. Esposito*, 354 F. Supp. 3d 354, 358 (S.D.N.Y. 2019) (quoting *United States v. Lewis*, No. 16 Cr. 0212, 2016 WL 6902198, at *2 (S.D.N.Y. Nov. 16, 2016)). "Other courts in the Second Circuit have found that '[n]ew and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event.'" *Esposito*, 354 F.Supp.3d at 358-59 (quoting *United States v. Quinones*, No. 13 Cr. 83S, 2016 WL 1694998, at *1 (W.D.N.Y. Apr. 28, 2016)). Moreover, "[a] court may properly reject an attempt to reopen a detention hearing where the new information presented is immaterial to the issue of flight risk or danger to the community." *United States* v. *Hunter*, 2014 WL 6632965, *2 (S.D.N.Y. Nov. 24, 2014) (citing *United States v. Hare,* 873 F.2d 796, 799 (5th Cir. 1989)); *see also United States* v. *Lewis*, 2016 WL 6902198, *2 (S.D.N.Y. Nov. 16, 2016) (denying motion to re-open bail proceedings where defendant failed to "present new information that bears on truly changed circumstances, something unexpected, . . . a significant event, or the like") (internal quotation marks omitted)).

## Discussion

The Court should readily dismiss the defendant's re-warmed arguments for bail. As a threshold matter, the defendant's application should be denied for the straightforward reason that the Court has already resolved this issue (twice) and ruled that no bail conditions could be set that ensure the defendant's continued appearance. Notably, the defendant neither cites to nor grapples with the controlling legal standard on a motion to reopen the bail determination—he must show that there is information "that was not known to the movant at the time of the hearing" that "has a material bearing on the issue." 18 U.S.C. § 3142(f)(2)(B). It is clear why he did not cite to that standard: he cannot meet it. Certainly, the defendant comes nowhere near showing the type of "truly changed circumstances, something unexpected, or a significant event" that courts in this District have required in order to reconsider a ruling on bail. *Esposito*, 354 F.Supp.3d at 358-59.

None of the facts in this new application relating to the defendant's ties to the community, his business interests in the United States, his family's wealth, or the reasons he was arrested at the apartment of his co-conspirator George Nikas, (Def. Ltr. at 10-14) are new facts. They all were known to the defendant at the time of his first two bail hearings before Your Honor, on October 18 and October 23. The Court carefully considered prior arguments based on these facts and nevertheless rejected the defendant's applications. Given that the Court already found that no conditions can assure the defendant's release, it is unclear what added information the defendant provides through his proposed bail package. Ultimately, the defendant's decision to flee will come down to a monetary cost-benefit analysis – and the Court can have no

3

confidence that he will choose to stay.  As such, these arguments cannot now support a motion to reopen the bail hearing under 18 U.S.C. § 3142(f).

*The Defendant Remains a Substantial Risk of Flight*

Moreover, none of the facts proffered in the defendant's renewed application has a material bearing on the defendant's risk of flight.  It remains uncontested that the defendant's family is extraordinarily wealthy and that the wealth is largely located overseas.[3]  It remains uncontested that the defendant has an extensive history of foreign travel, and of late has spent more time outside of the United States than within the United States.  And it remains uncontested that the defendant himself does not have a residence in New York, despite his claim to have deep ties to the community—his *family* owns an apartment off Fifth Avenue on the Upper East Side, and he was not even able to stay at this apartment on his most recent stopover in New York because his sisters were occupying the apartment.

In short, the facts on which the Court relied when making the determination to detain the defendant pending trial have not changed, and the application presents no facts that bear on the defendant's ties to the community, his business interests in the United States, his family's wealth, or the reasons he was arrested at the apartment of his co-conspirator George Nikas, that were not known to the defendant when he was first arrested.  All of the arguments that the defendant makes about his motive to flee versus his motive to remain in the United States pending this criminal case applied with equal force during the course of the prior proceedings.

In fact, certain of the claims now advanced by the defendant in his renewed application strain credulity.  For example, despite two previous court appearances where there was substantial discussion of the fact that the defendant was arrested while sleeping at Nikas's apartment, yesterday for the first time the defendant claimed that before coming to the United States he entered into a 30-day rental agreement with Nikas in order to stay at the apartment.  Whether there was a rental agreement or not is irrelevant—his presence in that apartment, from which agents also seized open SIM card cases, demonstrates his continuing close relationship with Nikas.  Moreover, it is notable that while the defendant attached 22 exhibits to his renewed bail application, he did not attach *any* documentary evidence of this "rental" agreement.

As another example, the defendant claims that his work with one Lavidas family business, named Technomed and located at least in part in the United States, indicates that he has strong professional ties to the United States.  However, after his arrest when Pretrial Services asked him where he was employed, he said that he worked for Lavipharm in Paris, France.  He now claims that while he "is technically employed by one of the family businesses incorporated

---

[3] Counsel has submitted a schedule purporting to show the Lavidas family assets, which is contained in Exhibit 1 of the defendant's letter.  This schedule appears to be a self-serving spreadsheet created for purposes of the instant application.  At this point, neither the Court nor the Government has any way of verifying its accuracy, whether assets have been undervalued, and whether assets have been omitted.  Nonetheless, even this self-serving spreadsheet depicts a substantial level of family wealth, and that level of overseas wealth provides a strong incentive for the defendant to flee.

in France," Technomed has substantial business in the United States, (Def. Ltr. at 11). That argument misses the mark. The center of gravity of his family businesses is and has always been outside the United States, and the fact that one Lavidas business is incorporated in the United States does not change that analysis.

Finally, by way of context it is important for the Court to note the status of other defendants in this and related insider trading schemes recently unsealed by the Government. The defendant's co-conspirator Nikas, who is also charged in the Indictment, is aware of the charges in the Indictment, and has recently advised the Government, through counsel, that he plans to a remain a fugitive in Greece rather than submit to the jurisdiction of the Court. Similarly, insider trading defendants Benjamin Taylor and Darina Windsor (*see* 18 Cr. 184 (VSB)) – who were involved in another insider trading scheme referred to in the Indictment as the Corporate Acquisitions Insider Trading Scheme involving certain overlapping individuals – are aware of the charges against them and have refused to surrender to face charges in the United States. In fact, Taylor was previously arrested in a foreign jurisdiction and immediately returned to his native France, where he is immune from extradition, when released on bail. Likewise, insider trading defendant Joseph El-Khouri (*see* 19 Cr. 652 (JGK)) was recently arrested in London, and thus far has not agreed to extradition. Without assigning guilt by association to the defendant, these examples demonstrate that similarly situated defendants involved in insider trading activity have taken the opportunity to flee and avoid facing trial in the United States. Given the defendant's motive and ability to flee, continued remand is appropriate in order to ensure that he does not join this cast of fugitives.[4]

*The Government's Case is Strong*

The defendant further claims that counsel's review of the discovery in this case indicates that the Government's case is not strong and therefore his incentive to flee is minimal. (Def. Ltr. at 6-10). As a threshold matter, it is quite clear that the "defendant's own evaluation of . . . the strength of the case against him" does not qualify as new information under 18 U.S.C. 3142. *Esposito*, 354 F.Supp.3d at 358-59. For that reason alone, the Court should reject this argument. Furthermore, the Court has already considered the defendant's arguments about the strength of the case and rejected them. (Dkt. No. 11). And yet, even if the Court were inclined to take yet another look at the strength of the case, the Court would conclude that the defendant is wrong. The Government's evidence that the defendant illegally leaked Ariad's MNPI to Nikas – and that that illegal tipping yielded millions of dollars in illicit profits – is quite strong.

---

[4] The defendant also suggests, as a fallback argument, that he would be amenable to release under private armed security guards, while acknowledging that in the Second Circuit, such arrangements are discouraged. *United States v. Boustani*, 932 F.3d 79 (2d Cir. 2019). The Honorable Richard M. Berman considered and rejected a similar request by a defendant with access to substantial overseas wealth, and determined that "[t]he privately funded armed guard regime proposed by the defense is not reasonable because, in too many respects, it substitutes judicial oversight and management for (more appropriate) reliance upon trained, experienced, and qualified professionals from the U.S. Bureau of Prisons and the U.S. Marshals Service." *United States v. Zarrab*, No. 15 Cr. 867 (RMB), 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016).

As detailed in the Indictment, and as the Court has heard at prior arguments in this case, the Government expects that the evidence will demonstrate that Nikas (and others with whom Nikas was close) placed timely, profitable trades in Ariad's stock shortly before the public announcement of market-moving information on four separate occasions. The Government further expects that the evidence will demonstrate that around the time of each of these trades there were timely communications between Athanasios and the defendant and/or the defendant and Nikas. Indeed, the first of these four occasions was the first time that Nikas *ever* traded in Ariad's stock. And the evidence will show that the way in which Nikas obtained this information is equally clear. Nikas had an extremely close personal relationship with the defendant during the time period when the defendant's father, as a board member, had access to Ariad's MNPI. In additional to their otherwise close relationship, evidence will show that Nikas and the defendant spoke specifically about stock trading and exchanged information about particular companies.

This evidence of insider trading by the defendant and Nikas will be further corroborated by, among other things, the testimony of a downstream tippee of Nikas. The defendant's evidentiary arguments and his claims about the motive of cooperators to lie or exaggerate are standard tropes of cross-examination. They do not, however, merit a reconsideration of bail at this juncture. The Government should not be required to provide a roadmap of its case and the Court should not be required to rule on the merits of evidentiary questions in order to resolve bail. The Government's evidence of insider trading is strong and the defendant will have his day in court in short order.

The defendant's attempts to poke holes in the Government's proof with respect to particular elements of insider trading law fare no better. By way of example, the defendant claims that the Government lacks evidence of any "personal benefit" received by the defendant in exchange for the material, non-public information about Ariad that the defendant provided to Nikas. (Def. Ltr. at 7-9). Assuming for purposes of this filing the validity of the defendant's proposition that the Government would need to prove that the defendant received a benefit, there is ample evidence of such a personal benefit to the defendant. First, the trial evidence will include documents establishing that Nikas loaned $200,000 to the defendant's company, and Nikas's wife invested $500,000 in the defendant's company, both in 2016. Evidence will establish that these transactions occurred while the defendant was seeking investments into his company and was more generally trying to curry favor with wealthy businesspeople like Nikas. While the defendant argues these were bona fide financial transactions documented by contracts, that is not the point. There is no question that the defendant and his family derived financial benefits from Nikas from such investments, and the jury will be able to conclude that these benefits were related to the defendant's provision of inside information about Ariad to Nikas.

Second, the evidence will also show that the defendant and Nikas had a close personal relationship sufficient to establish a personal benefit. *See Dirks v. United States Securities and Exchange Commission*, 463 U.S. 646, 664 (1983) (holding that a personal benefit can be inferred from "a gift of confidential information to a trading relative or friend"). The Government has produced to the defense a substantial amount of evidence, including a series of emails between the defendant and Nikas, demonstrating that they have long enjoyed a very close, personal friendship. For example, evidence will show that Nikas paid for trips and meals for the

6

defendant, and the two shared highly personal, sensitive information with each other.  And, as the Court has heard numerous times, the defendant was arrested in Nikas's home.

## Conclusion

For the foregoing reasons, the Court should deny the defendant's attempt to re-open his bail hearing and should reject the defendant's renewed application for bail.

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney

                          by: _____/s/_____
                                  Richard Cooper/Daniel Tracer
                                  Assistant United States Attorneys
                                  (212) 637-1027/2329

cc:     Defense counsel (by ECF)